IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 6, 2012

## STATE OF TENNESSEE v. KIARA TASHAWN KING

**Appeal from the Circuit Court for Marshall County**
**No. 1170CR      Robert Crigler, Judge**

**No. M2012-00236-CCA-R3-CD - Filed March 4, 2013**

The defendant, Kiara Tashawn King, pled guilty to aggravated burglary, a Class C felony, and theft of property with a value of $500 or more, a Class E felony. Following a sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender, to an effective five-year sentence, to be served on probation. On appeal, the defendant contends that the trial court failed to follow the correct sentencing procedure, imposed an excessive sentence, and erred by denying judicial diversion. Upon review, we conclude that the trial court did not abuse its discretion by imposing an effective sentence of five years of probation and that its decision to deny judicial diversion did not wholly depart from the principles and purposes of the Sentencing Act. We affirm the sentences imposed by the trial court accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Forest A. Durard, Jr., Shelbyville, Tennessee, for the appellant, Kiara Tashawn King.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

On August 17, 2011, the defendant was indicted on one count of aggravated burglary and one count of theft of property with a value of at least $500 but less than $1000. On October 5, 2011, the defendant pled guilty to both counts and applied for judicial diversion.

During the guilty plea colloquy, the State recited the factual basis of the charges. The female victim and her family members lived in a group of houses situated along the same road. On the day in question, while the victim and some of her family members were sitting on the front porch of another family member's house, they watched a car pass by the victim's house before turning around and pulling into the victim's driveway. The defendant was driving the car.

The victim's family watched as three other individuals exited the car and went into the victim's house. The victim left the porch and returned to her house, followed by her father. As they arrived, they saw two male suspects leaving the victim's house, one of whom was carrying a television set. The third individual, who was female, pulled a gun on the victim. One of the male suspects instructed the female suspect to shoot the victim. When the victim's father pulled up in his vehicle, the same female suspect pointed her gun at the father. The same male suspect ordered the female suspect to shoot the victim's father. Then the suspects dropped the television set, jumped into their car, and sped away.

Police investigation revealed that all four suspects resided in Rutherford County. Three adults—including the defendant—and one juvenile were arrested. Following her arrest, the defendant gave two statements to law enforcement. In these statements, the defendant inculpated herself in the crimes.

At the conclusion the colloquy, the trial court accepted the defendant's guilty plea to both counts contained in the indictment. At a sentencing hearing held on December 21, 2011, Ms. Krystal Gray of the Department of Probation and Parole testified concerning the defendant's presentence investigation report. Ms. Gray noted that the defendant was nineteen years old at the time of the offense and was the driver of the automobile involved in the burglary. Ms. Gray recalled that the defendant had given statements to Detective Oliver on May 8 and on May 9, 2011. She testified that she had included both statements in her presentence report.

In the statement given on May 8, 2011, the defendant indicated that she had received a call from one of her co-defendants, Mr. Jacobi Vaughn, who requested her to take him to a friend's house. According to her statement, the defendant picked up Mr. Vaughn, his little

brother, and an unnamed black female who "look[ed] like a guy." The defendant stated that she was directed to a specific location. Once the group arrived at that location, the three passengers left the car, while she remained behind. The defendant indicated that sometime later, the three passengers jumped back in the car. Afterward, she dropped them off on Medical Center Parkway in Murfreesboro. During the trip back to Murfreesboro, the defendant's brother called to tell her that the police were looking for her. The defendant stated that instead of turning herself in, she chose to get into another vehicle. She was eventually apprehended by the police.

Ms. Gray testified that in the defendant's second statement to police, given the following day, she gave a different accounting of the facts. In her second statement, the defendant indicated that she had known the black female passenger, Ms. Mariah McCutcheon, prior to the date of the burglary in question. The defendant told Detective Oliver that about a week or two prior to the burglary, she had driven Ms. McCutcheon and Mr. Jacobi Vaughn to a house near Smyrna, in Rutherford County, Tennessee. According to the defendant, after she took them there the two broke into a house and stole a flat screen television. In addition, the defendant admitted that before she had driven the group to the burglary on the day in question, Ms. McCutcheon had sent her several text messages asking her to pick her up so they could go "hit a lick," which she understood to mean "break into a house or something like that."

Ms. Gray testified that when she interviewed the defendant in conjunction with preparing her presentence report, the defendant argued that she should only be placed on probation—not because she had a clean criminal record, but because she had only served as the group's driver. The defendant added that she did not think that "it" would "go this far," and she claimed that had she known, she would not have participated. Ms. Gray testified that the defendant also gave her a statement, which she had included in her presentence report. In the statement, the defendant acknowledged that she had received a call from Ms. McCutcheon to come pick her up so they could "hit a lick or something." However, she claimed that "we made a plan to drop them off and call the police." Ms. Gray testified that when she asked the defendant about her participation in the earlier burglary discussed in her second statement to police, the defendant denied any involvement in it.

Ms. Gray testified that she found no adult or juvenile criminal record for the defendant. No drug use was reported. Ms. Gray noted in her report that the defendant had graduated from Smyrna High School in 2010 with a GPA of 1.8571, having completed it in three years with summer school. Her report reflected that the defendant had ten days tardy, eight days in detention, and six days in-school suspension due to the tardy days.

Ms. Gray testified that the defendant was unemployed at the time she prepared the

report. The defendant reported that she had been accepted into a radiology technology program, but she provided no documents to support her claim. Ms. Gray testified that the defendant had also failed to provide any proof that she was actively seeking employment.

On cross-examination, defense counsel asked Ms. Gray if the defendant might have failed to mention the black female by name in her first statement to police because she was afraid of Ms. McCutcheon. Ms. Gray agreed that was possible. Ms. Gray also testified that the defendant had claimed to her that she did not know that one of her co-defendants was carrying a gun on the day in question. Ms. Gray concluded by acknowledging that the defendant was quiet and cooperative during the interview.

Ms. Pamela King, the defendant's mother, testified that she resided in Smyrna, Tennessee with her son and the defendant. She testified that she and her husband had been separated for almost seven years and had been divorced for about four and one-half years. Ms. King described the defendant as an average student and average teenager with no disciplinary problems. Ms. King recalled that the defendant worked for a temporary agency for six or seven months but was not hired full time due to a hiring freeze. She also testified that the defendant had been employed with Taylor Farms. Ms. King testified that her daughter had been unemployed since her employment there ended but claimed that she had been looking for employment and that she had interviewed for a position with Nissan. Ms. King testified that the defendant participated in track and field through high school, and she had worked as an assistant to the manager and later as the manager of the school football team.

Ms. King testified that she did not meet Ms. McCutcheon until after the burglary. She testified that she was shocked to learn that her daughter had participated in the burglary and that committing that type of crime was outside of her daughter's character. Ms. King testified that she would do anything to assist her daughter with successfully completing probation. She claimed her daughter had plans to further her education by participating in a radiology technician program.

On cross-examination, Ms. King acknowledged that she had not brought with her to court a letter reflecting her daughter's acceptance into the radiology technician program. She testified that her daughter had applied to work at the Nissan battery plant but denied that the application was for janitorial work.

Mr. Ricky King, the defendant's father, testified that throughout his separation and ensuing divorce he had maintained contact with his daughter. Mr. King testified that he would assist his daughter in completing probation if such was granted by the court.

After receiving this evidence, the trial court noted that it had sentenced the defendant's co-defendant Ms. McCutheon—whose only prior adult conviction was a misdemeanor for filing a false police report—to serve four years and the defendant's co-defendant Mr. Jacobi Moore—whose only prior conviction was for alcohol consumption—to serve three years and three months. The trial court recognized that the defendant had no criminal record, but the court also recognized that the defendant had been tardy to (and disciplined in) school. The trial court acknowledged that the defendant stayed in the car during the burglary, but the court found that she was still criminally responsible for the burglary because "she knew what they were going to do and she participated." The trial court agreed that the defendant was likely a follower rather than a leader, and the court stated its belief that the defendant would not have been involved in the instant burglary had it not been for her co-defendants.

The trial court concluded the hearing by taking the matter under advisement. The court noted that the "real hard" decision concerned judicial diversion; the court strongly hinted that alternative sentencing was likely because the defendant had no criminal record. The court advised the defendant that getting a job or entering an education program was going to be a condition of any such sentence.

On January 4, 2012, the trial court reconvened to impose sentence. The court first confirmed that the defendant was employed on a full-time basis. Next, the court found that the defendant had no prior record as an adult and had never been placed on probation. Finally, after finding that the defendant was a Range I, standard offender—meaning that the burglary was punishable by three to six years—the trial court set the defendant's sentence at five years. The trial court granted the defendant's request for probation as an alternative sentence, but the court required the defendant to complete victim impact classes and to maintain gainful employment as conditions of her probation.

After issuing this ruling, the trial court stated the following:

> Oh, yeah, I am going to respectfully deny your request for the expungement, 40-35-313. I realize I did mention it is a non-violent crime. However, there was a weapon employed by one of the co-defendants.
>
> In my opinion allowing her the opportunity to expunge this would depreciate the seriousness of the offense. Send the wrong message.
>
> I am going to respectfully deny that. It is a hard call on that. I think the need to send a message – I know people don't

think probation sends a message. At least I am not going to do that because it was a very serious episode even though I don't think the defendant was involved in that and she stayed in the car the whole time. Nevertheless, there was a firearm at the scene.

The defendant timely filed a notice of appeal. We proceed to examine her claims.

## ANALYSIS

On appeal, the defendant contends the trial court failed to follow the correct sentencing procedure and that her overall sentence was excessive. She also maintains that the trial court abused its discretion in failing to place her on judicial diversion.

## A. EXCESSIVE SENTENCES

First, we address the defendant's claim that the trial court did not follow the correct sentencing procedure and that the resulting sentence was excessive. We review a defendant's challenge to an in-range sentence under an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) ("[T]oday we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."). "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. An in-range sentence imposed by a trial court will be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing" which justify the sentence imposed. *Id.*

The defendant's sentences are within the relevant range in light of her offender class and the grade of her offenses. As to the aggravated burglary conviction, a Class C felony, the defendant, as Range I offender, faced a potential sentence of three to six years. The defendant was sentenced to five years on this count. On the conviction for theft of property over $500, a Class E felony, the defendant, as a Range I offender, faced a potential sentence of one to two years. The defendant was sentenced to a concurrent one-year and six-month sentence on this count. Because the defendant's sentences are in-range, we review them under an abuse of discretion standard.

After review, we discern no abuse of discretion by the trial court. At the conclusion of the sentencing hearing, the trial court generally assessed the evidence that had been

presented. While not specifically referencing particular enhancing or mitigating factors by name, the court discussed on the record various factors that were of importance to it in setting sentence. The trial court explained the basis of the co-defendants' sentences, noting their respective criminal records, serious disciplinary problems, and weapon use. The trial court recognized that the defendant had no prior criminal record and agreed that the defendant was likely a follower rather than a leader. The court also recognized no one was actually harmed during the commission of the defendant's crimes. However, the trial court noted that a firearm had been employed during the commission of the offense and that the need for deterrence strongly counseled against leniency. We discern no abuse of discretion in the trial court's consideration of these factors or in the resulting sentences.

The defendant argues that the trial court failed to follow the correct sentencing procedure. Other than challenging the trial court's failure to cite to the specific statutory enhancing or mitigating factors upon which it relied, the defendant's only other complaint concerning the trial court's sentencing procedure was that the court put the "cart before the horse" by discussing conditions of probation prior to announcing the sentence length.

These arguments provide no grounds for granting relief. If a trial court's complete misapplication of enhancing or mitigating factors does not serve to invalidate a defendant's sentence, *see id.* at 706, it follows *a fortiori* that a trial court's mere failure to mention specific enhancing or mitigating factors during its sentencing soliloquy provides no basis for invalidating a defendant's sentence. Although the trial court did not engage in a scripted recitation of the applicable enhancing and mitigating factors, the trial court did nonetheless generally follow appropriate sentencing principles. The trial court considered and weighed enhancing and mitigating evidence and imposed sentences within the appropriate range. The defendant's claim that the trial court erred by failing to follow correct sentencing procedures and by imposing excessive sentences is denied.

## B.  DENIAL OF JUDICIAL DIVERSION

The defendant claims that the trial court abused its discretion by denying her petition for judicial diversion. Judicial diversion is a legislative largess which, provided certain conditions are met, affords certain types of convicted defendants the opportunity to avoid having a permanent criminal record. *See* T.C.A. § 40-35-313(a). We review a trial court's decision to deny an application for judicial diversion under an abuse of discretion standard, and there is no presumption in favor of judicial diversion. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 228-29 (Tenn. Crim. App. 1998). "[T]his Court will not interfere with the refusal of the trial court to grant judicial diversion if there is any substantial evidence to support the refusal contained in the record." *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (internal quotations omitted).

Notwithstanding our consistent repetition of this deferential standard of review, in practice, this court has long eviscerated this deference and hamstrung the ability of trial courts to deny judicial diversion by imposing extremely stringent procedural requirements with respect to any diversion decision. It has been long settled that "[i]n determining whether to grant judicial diversion, the trial court must consider[:] (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused." *Electroplating, Inc.*, 990 S.W.2d at 229. We have held that "the record must reflect that the court has weighed all of the factors in reaching its determination," and "if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." *Id.* If a trial court refuses to grant judicial diversion, we have required the trial judge to state on the record "the specific reasons for its determinations." *State v. Parker*, 932 S.W.2d 945, 958-59 (Tenn. Crim. App. 1996). Any failure by a trial court to expressly consider and weigh each of the seven factors listed in *Electroplating* has long been deemed grounds for reversal by this court. *See, e.g., State v. Lewis*, 978 S.W.2d 558, 566-67 (Tenn. Crim. App. 1997) (reversing trial court's denial of judicial diversion due to court's failure to make specific findings concerning the defendant's amenability to correction).

In the last year, there has been a sea of change in the legal landscape concerning appellate review of virtually every aspect of sentencing. In a pair of recent decisions, our supreme court has made clear that primary responsibility for determining the appropriate sentence rests with trial courts and that their decisions are presumptively reasonable. *Bise*, 380 S.W.3d at 707-08; *State v. Christine Caudle*, No. M2010-01172-SC-R11-CD, 2012 Tenn. LEXIS 824, at *16 (Tenn. Nov. 27, 2012). Mistakes—even ones that in the past would have been deemed serious mistakes meriting reversal, such as the complete misapplication of an enhancement or mitigating factor—no longer serve to invalidate a defendant's in-range sentence so long as the trial court did not wholly depart from principles and purposes of the Sentencing Act. *Bise,* 380 S.W.3d at 706. If this court determines that a trial court made errors when imposing sentence, we are nonetheless directed to throughly review the record to determine if the sentence imposed by the trial court may be affirmed on any other grounds appearing therein. *See id*. at 710.

Lest this court succumb to the temptation to limit the overarching principle of *Bise* only to decisions concerning the overall term of a defendant's sentence, our supreme court in *Caudle* "explicitly h[e]ld that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 2012 Tenn. LEXIS 824, at *16. As the *Caudle* court

explained, "[a]s stated in *Bise*, 'when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the 'presumption of correctness' ceased to be relevant.'" *Id.* (quoting *Bise*, 380 S.W.3d at 708).

The stringent procedural requirements governing the judicial diversion process that we imposed on trial courts in *Parker* and *Electroplating* directly conflict with our duty, imposed by *Bise* and *Caudle*, to treat all in-range sentences imposed by trial courts as presumptively reasonable. Therefore, we can reach no conclusion other than that those portions of *Parker*, *Electroplating*, and their progeny in which this court reversed a trial court's decision to deny judicial diversion merely because the trial court failed to expressly consider one or more of the seven legally-relevant factors (or merely because it failed to specify why some factors outweighed others) can no longer be considered governing law. Instead, in order to comply with *Bise* and *Caudle*, in cases in which a trial court has made a procedural omission in the course of denying judicial diversion, we must in fact apply the standard of review that we have always purported to follow, *see Parker*, 932 S.W.2d at 958, and uphold the trial court's denial of judicial diversion if we find any substantial record evidence supportive of its decision.

Without question, the record in this case is scant on the issue of judicial diversion. Although the trial court generally acknowledged at the sentencing hearing that it had received the defendant's petition for judicial diversion, the court made no mention of the relevant considerations at that time. When the matter reconvened for imposition of the sentence, the trial court did not mention judicial diversion until the conclusion of the sentencing matter, when it discussed the issue almost in passing. The court recited its previous finding that the offense was a non-violent crime but recognized that a weapon was employed by one of the co-defendants. The court held that allowing expungement *via* judicial diversion would "depreciate the seriousness of the offense" and "send the wrong message." At best, the record reflects that the trial court expressly considered and discussed two of the seven relevant factors: factor (b) the circumstances of the offense, and factor (f) the deterrence value to the accused as well as others. *See Electroplating, Inc.*, 990 S.W.2d at 229.

Nonetheless, we start with the presumption that the trial court's decision to deny judicial diversion was reasonable. The record supports the trial court's conclusion that the defendant committed a serious crime. The victim testified that she interrupted the aggravated burglary while it was in progress. The victim saw a co-defendant with a firearm. In response to her interruption, another one of the defendant's co-defendants ordered the co-defendant with the gun to shoot the victim and her father. The defendant acted as the getaway driver for her co-defendants and, as the trial court found, had full knowledge of their intentions.

Our review of the record leads us to the conclusion that this particular defendant is not

particularly amenable to correction. The defendant had several opportunities to take responsibility for her actions by, for example, turning herself in when she first discovered that the police were looking for her or by telling the police the truth once she had been unwillingly apprehended. By her own admission, she did neither. This fact, combined with the seriousness of the defendant's crimes and the need to deter against such crimes in the future, strongly counsel against permitting this defendant to be placed on diversion.

In sum, the record contains substantial evidence supporting the trial court's decision to deny judicial diversion, both on the grounds that it discussed (the circumstances of the offense and deterrence) as well as on other grounds (the defendant's amenability to correction). Notwithstanding the trial court's failure to expressly consider and weigh all seven of the legally-relevant factors expressed in (and previously required) by *Parker* and *Electroplating*, the defendant has failed to rebut the presumption of reasonableness this court must now afford to all in-range sentencing decisions. The defendant's claim that the trial court abused its discretion by denying her petition for judicial diversion is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE